1
2
3
4
5
6                       UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
7                              AT SEATTLE
8
   _____
9                                            )
   REBECCA IRENE FISHERIES, LLC,             )
10                                           )    Case No. C05-0891L
                              Plaintiffs,    )
11           v.                              )
                                             )    ORDER REMANDING MATTER
12 CARLOS M. GUTIERREZ, et al.,              )    TO SECRETARY OF COMMERCE
                                             )
13                            Defendants.    )
   _____   )
14
15          This matter comes before the Court on the parties' cross-motions for summary
16 judgment.  Dkt. # 12 and 18.  Plaintiff argues that the Secretary of Commerce's finding of
17 liability under 50 C.F.R. 679.7(g)(4), the imposition of substantial civil penalties, and the
18 suspension of its fishing license were arbitrary, capricious, and not supported by the law.
19 Defendants, on the other hand, argue that plaintiff's violations of the Magnuson Act, 16 U.S.C.
20 § 1801, were intentional, generally undisputed, and amply support the penalties imposed.
21 Having reviewed the submissions of the parties, the administrative record ("AR"), and the
22 remainder of the record, the Court finds as follows:
23          (1)  Because this matter comes before the Court on cross-motions for summary judgment,
   the Court must "determine whether or not as a matter of law the evidence in the administrative
24 record permitted the agency to make the decision that it did."  City & County of San Francisco
25 v. United States, 130 F.3d 873, 877 (9th Cir. 1997).  The agency's final decision must be
26
   ORDER REMANDING MATTER TO
   SECRETARY OF COMMERCE

affirmed if it is based on the proper legal standards and the findings are supported by substantial evidence in the record as a whole.  See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993); Diehl v. Franklin, 826 F. Supp. 874, 878 (D.N.J. 1993).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  See also Magallanes v. Brown, 881 F.2d 747, 750 (9th Cir. 1989).  If the evidence can reasonably support either affirming or reversing the agency's conclusion, the Court may not substitute its judgment for that of the agency: in such circumstances, the agency's conclusion must be upheld.  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995); The Fishing Co. of Alaska v. United States, 195 F. Supp.2d 1239, 1247 (W.D. Wash. 2002).  Only if the liability and/or penalty determinations are based on legal error, are not supported by substantial evidence in the record, or are arbitrary and capricious will the Court set aside the agency's decision.  5 U.S.C. § 706(2); Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986); Assoc. of Data Processing Serv. Orgs. v. Bd. of Governors of Fed. Reserve Sys., 745 F.2d 677, 683 (D.C. Cir. 1984).

(2) Although plaintiff has admitted the violations of the Magnuson Act alleged in Counts I and III of the Notice of Violation and Assessment of Administrative Penalty and Notice of Permit Sanction (AR Vol. I, Ex. 1), plaintiff argues that Count II should have been dismissed because the Administrative Law Judge ("ALJ") found that plaintiff had not built the removable panels on the fish conveyor belt for the purpose of impeding the observer's performance of his duties.  Count II alleges:

> Between the dates of April 3, 2000 and October 11, 2001, Mark S. Decker, operator of the fishing vessel REBECCA IRENE, acting for himself and on behalf of Rebecca Irene Fisheries LLC, owner of said vessel, prohibited or barred by command, impediment, threat, coercion, an observer from collecting samples, making observations, or otherwise performing the observer's duties in violation of 50 C.F.R. 679.7(g)(4), to wit: caused building of removable side panels adjacent to the fish conveyor incline belt which, when removed, allowed crewmembers to

ORDER REMANDING MATTER TO
SECRETARY OF COMMERCE                    -2-

remove halibut from the conveyor belt, thereby preventing the observer from collecting samples.

As written, the charge does not allege that the panels were built to facilitate presorting.  Rather, Count II simply alleges that the removable side panels were built and that they were used to remove halibut from the conveyor belt.  The ALJ found both of these elements (AR Vol. I, Ex. 38 at 24) and rightly concluded that plaintiff violated the Magnuson Act as charged in Count II.

(3) Plaintiff also challenges the agency's decision to charge two separate counts based on the same underlying conduct.  According to plaintiff, the agency should be precluded from "pyramiding penalties" through use of a multi-count indictment when the facts underlying each count are identical.  Plaintiff acknowledges, however, that where the alleged regulatory violations require proof of one or more distinct facts, cumulative civil penalties are permitted under the Magnuson Act.  Lovgren v. Byrne, 787 F.2d 862, 863 (3rd Cir. 1986).  Count I alleges that the crew of the REBECCA IRENE sorted or discarded catch before the observer could sample in violation of 50 C.F.R. 679.7(g)(2).  Count II additionally alleges that the crew impeded the observer from performing his or her duties by using the removable side panels adjacent to the conveyor belt.  Although the charges are similar, in order to prove the violation alleged in Count II, the agency was required to show that plaintiff utilized an impediment to accomplish the presorting/discarding alleged in Count I.  As a legal matter, the ALJ did not err when he allowed both Counts I and II to proceed.[1]

(4) Plaintiff argues that the ALJ's assessment of civil penalties was arbitrary and capricious for a number of reasons.  First, plaintiff asserts that the penalty determination was based in part on the perjured testimony of Steve Haggard.  Second, plaintiff maintains that the ALJ ignored the agency's published penalty schedule without explanation or justification.

---

[1] As a practical matter, the ALJ believed the offenses to be so closely related that he did not impose separate and cumulative punishments for each.  AR Vol. I, Ex. 38 at 24-25.

ORDER REMANDING MATTER TO
SECRETARY OF COMMERCE            -3-

Third, plaintiff asserts that the facts of this case and/or the ALJ's analysis do not support the monetary sanctions or the license suspension imposed.

Underlying plaintiff's first argument is the assumption that the ALJ relied on Mr. Haggard's testimony regarding the extent of the presorting that occurred on board the REBECCA IRENE when assessing sanctions in this case.  That assumption is not only unsupported, it is refuted by the record.  In his 26-page opinion, the ALJ never mentions, much less relies upon, Mr. Haggard's testimony.  In fact, the only time Mr. Haggard is mentioned at all is at page 10 where the ALJ notes that "Captain Decker relied particularly on Steve Haggard to make sure the presorting occurred in the factory."  Although the ALJ found that the presorting engaged in by the crew was "systematic and deceitful," he clearly did not credit Mr. Haggard's testimony that between 50-100 percent of the halibut by-catch was presorted.  Nor was he persuaded that the presorting was "extensive and persistent."  AR Vol., I, Ex. 38 at 18-19.  Mr. Haggard's original testimony regarding the extent of presorting was not, therefore, material to the ALJ's liability or penalty decisions.  Because the ALJ did not rely on Mr. Haggard's testimony in the first place, the fact that Mr. Haggard has now recanted that testimony does not make the ALJ's decision arbitrary or capricious.

Although an agency's discretion in assessing penalties is broad, if it publicly establishes a rule or policy by which its exercise of that discretion will be governed, an unexplained or irrational departure from the policy could be considered arbitrary and capricious or an abuse of discretion.  See Immigration and Naturalization Serv. v. Yang, 519 U.S. 26, 32 (1996); Ramaprakash v. FAA, 346 F.3d 1121, 1124 (D.C. Cir. 2003) ("agency action is arbitrary and capricious if it departs from agency precedent without explanation").  Plaintiff argues that the ALJ's imposition of civil penalties well in excess of the amounts set forth in the agency's

ORDER REMANDING MATTER TO
SECRETARY OF COMMERCE                    -4-

penalty schedule[2] was just such an abuse of discretion.  The penalty schedule itself makes clear, however, that the amounts set forth therein are recommended ranges that can be adjusted upward or downward depending on the facts and circumstances of a particular case.[3]  After considering the nature, circumstances, extent, and gravity of plaintiff's violations and plaintiff's degree of culpability, history of prior offenses, ability to pay, and such other matters as justice may require (including the similarities between Counts I and II and the fact that plaintiff was not personally involved in the violations), the ALJ concluded that, although the $360,000 sought by the agency was excessive, that plaintiff's conduct demanded a penalty "which cannot be written off as the cost of doing business."  AR Vol. I, Ex. 38 at 25.  The ALJ fully explained why he believed plaintiff's conduct warranted a civil penalty of $240,000, focusing much of his analysis on the fact that the crew of the REBECCA IRENE acted intentionally, placed the pursuit of profit over all other considerations, and engaged in conduct which threatened to undermine the agency's efforts to manage the sustainable marine resources of the North Pacific.  Although the ALJ clearly believed that plaintiff's conduct was egregious enough to justify the imposition of the maximum statutory penalty of $120,000 per violation, he reduced the total penalty by one-third in light of the similarity between Counts I and II.  The ALJ's departure from the agency's penalty schedule was neither irrational nor unexplained.[4]

[2]  See Groundfish & Individual Fishing Quota Fisheries Off the Coast of Alaska, 50 C.F.R. Parts 300, 600, and 679 (dated 5/10/02) found at www.gcel.noaa.gov/schedules/2-USFisheries/Alaskagroundfishifq.pdf.

[3]  See Preface to the National Oceanic and Atmospheric Administration Civil Administrative Penalty Schedule (dated 8/02) found at www.gcel.noaa.gov/schedules/preface/Prefacefinal.pdf.

[4]  Plaintiff relies on Lobster, Inc. v. Evans, 346 F. Supp.2d 340 (D. Mass. 2004), for the proposition that the ALJ must specifically acknowledge the penalty schedule and explain why the recommended penalty was not imposed in this case.  The portion of Lobster, Inc. that deals with the penalty schedule states, in its entirety, that "If the ALJ disregarded penalty ranges set forth in an internal memorandum promulgated by NOAA, as alleged by plaintiffs, this, too, was an abuse of discretion."  346 F. Supp.2d at 349.  Assuming such a statement can be considered a holding, the court simply notes by

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Plaintiff argues, however, that the ALJ erred when he failed to consider each of the aggravating and mitigating factors set forth in the penalty schedule before settling on a penalty amount.  In its motion for summary judgment, plaintiff provides a list of such factors, citing "Alaska Region Penalty Schedule, page 15."  See Motion at 11.  The referenced page is not included in plaintiff's appendix, however, and the Preface to the agency's published penalty schedule contains a very different, and much more extensive, list of factors.  See Preface to the National Oceanic and Atmospheric Administration Civil Administrative Penalty Schedule (dated 8/02) found at www.gcel.noaa.gov/schedules/preface/Prefacefinal.pdf.  More importantly, the published penalty schedule gives the agency "wide latitude in considering how the specific facts and circumstances of a particular case apply to these listed factors.  Furthermore, the following listed factors are not meant to be an exclusive or exhaustive list.  Some factors may be disregarded, while additional factors may be considered, if appropriate, depending on the facts and circumstances of any particular case."  The schedule simply identifies factors which "may be considered in determining the proper penalty level within the penalty range or, where appropriate, above or below the range . . . ."  Although the consideration of certain factors is statutorily required (see 16 U.S.C. § 1858(a)), the fourteen factors identified in the preface are not mandatory.  The ALJ's analysis, which tracked the required statutory factors and addressed a number of the factors listed in the penalty schedule, was neither arbitrary nor capricious.

Finally, plaintiff asserts that the ALJ erred in his consideration of the statutory factors and/or that his analysis does not support the civil penalty and license suspension imposed.  The ALJ's findings regarding plaintiff's liability, intent, responsibility/culpability,

way of a hypothetical that the wanton disregard of a penalty schedule could result in a remand to the agency.  Neither Lobster, Inc. nor any other case law cited by the parties require the ALJ to discuss the recommended penalties per se.  As long as the penalty decision is explained, is based on substantial evidence in the record, is not arbitrary or capricious, and was reached after consideration of the relevant factors, it can and should be upheld by a reviewing court.

ORDER REMANDING MATTER TO
SECRETARY OF COMMERCE                        -6-

history of violations, and ability to pay, as well as his findings regarding the extent and potential impacts of plaintiff's presorting and the appropriateness of imposing full statutory penalties for both Counts I and II, are based on substantial evidence in the record.  The ALJ's conclusion that a monetary sanction of $240,000 would adequately punish plaintiff while avoiding any aggregation of penalties is reasonable, based on substantial evidence, and will not be disturbed. His decision to impose a 60 day permit suspension beginning on January 1, 2006, is not supported by the analysis, however.  Because the ALJ spent very little time addressing the appropriateness of and justification for the permit suspension,[5] the Court is left to guess why the ALJ converted the two separate 45 day suspensions requested by the agency into a single 60 day suspension covering an entirely different season.  The ALJ provides two explanations for this decision: first, that two 45 day suspensions are excessive in light of the similarities between Counts I and II and second, that the suspension should be moved to January 1st because that season is "most productive for the target species involved here."  Since the crew of the REBECCA IRENE engaged in presorting over an eighteen month period covering multiple seasons, it is not clear what "target species" is at issue.  If, as seems reasonable given the penalty analysis and his decision to decrease the permit suspension to 60 days, the ALJ intended to reduce the agency's requested sanction by approximately one-third, it is not clear how he came to the conclusion that a 60-day suspension during the winter rock sole roe season would accomplish that goal.  The ALJ did not cite any evidence in the record that would support such a conclusion and there is some indication that such a change would likely increase plaintiff's

---

[5] The statutory factors that must be considered when determining whether a permit suspension is appropriate are very similar to those which govern the imposition of monetary penalties.  See 16 U.S.C. §§ 1858(a) and (g).  Thus, much of the ALJ's analysis is applicable to both sanctions.  The only portion of the ALJ's decision that deals exclusively with the permit suspension reads: "I now turn to the proposed permit sanction.  The Agency requests that two separate 45 day periods of suspension be imposed for two different fishing seasons.  This proposal suffers from the same compounding effect as the proposed civil money penalty.  Consequently, I will impose a 60 day permit suspension for the season which is the most productive for the target species involved here."  AR Vol. I, Ex. 38 at 25.

ORDER REMANDING MATTER TO
SECRETARY OF COMMERCE                    -7-

monetary losses, despite the shorter suspension period.  <u>See</u> AR Vol. VI, Ex. 8(b) (comparison of the gross revenues from various seasons could lead to the conclusion that exclusion from the rock sole roe season could generate a loss of approximately $550,000 in revenue while exclusion from the spring rock sole and yellow fin sole seasons may cause a loss of less than $400,000). In short, the Court is unable to determine with a reasonable degree of certainty whether the ALJ intended to increase or decrease the financial effect of the recommended permit suspension and on what evidence his decision was based.  A remand is necessary to allow the ALJ to explain and/or reevaluate his decision regarding the permit suspension.

For all of the foregoing reasons, this matter is hereby REMANDED to allow the Secretary of Commerce an opportunity to review the record and explain and/or reevaluate his decision regarding the permit suspension.  Although the Secretary's decision is affirmed in all other respects, the permit suspension assessed against plaintiff is hereby VACATED.  In reconsidering this case, the Secretary may hold further hearings and/or receive additional evidence as he sees necessary.

DATED this 5th day of January, 2006.

Robert S. Lasnik
United States District Judge

ORDER REMANDING MATTER TO
SECRETARY OF COMMERCE                    -8-